UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESAMUEL PALMER,

               Plaintiff,

vs.                        Case No.  2:09-cv-401-FtM-36DNF

A. WALKER, M. KRAUS and S.
CONIGLIO,

               Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon review of the Motion
for Summary Judgment filed on behalf of Defendants M. Kraus and A.
Walker (Doc. #78, Motion).[1]  Defendants submitted exhibits in
support of their Motion (Doc. #78-1, Defs. Exhs. A-M).  Defendants
also submit three closed circuit video recordings, *in camera*,
including a wing video that recorded the incident at issue, but
fails to convey spoken words, and two hand held videos that
recorded events that occurred subsequent to the application of
chemical agents.  See Doc. #80 (hereinafter "Video 1," "Video-2,"
and "Video-3").  After being granted two extensions of time,
Plaintiff filed a response (Doc. #91, Response) in opposition to

---

[1]As of the date on this Order, service of process had not yet
been effectuated upon Defendant Coniglio.  *See* docket entries dated
July 8, 2010, Doc. #82 (directing personal service at last known
address for Defendant Coniglio), July 9, 2010 (reissuing summons),
and, July 22, 2010 (Doc. #86), return of service unexecuted and
address found vacant by U.S. Marshal.

the Motion and attached supporting exhibits (Doc. #91-1, Pl's Exhs.).  This matter is ripe for review.

## I. Status

*Pro se* Plaintiff is proceeding in this action on his Amended Complaint, filed September 14, 2009 (Doc. #10, Complaint).  The Complaint alleges that Plaintiff was subjected to cruel and unusual punishment on February 3, 2009, in violation of his Eighth Amendment rights, while Plaintiff was incarcerated at Charlotte Correctional Institution ("CCI").  Complaint at 8.  Plaintiff names three Defendants: CCI Lieutenant A. Walker; and Correctional Officers M. Kraus and S. Conigilio.  *Id.* at 6-7.

The following facts are set forth in the Complaint in support of Plaintiff's Eighth Amendment claim.  Plaintiff, who was housed on close management status[2] in cell 3210 in F-dormitory, was removed from his cell by Officers Kraus and Conigilio to attend recreation.  *Id.* at 8.  As Plaintiff was being escorted to recreation, Plaintiff "was [ex]changing words" with the Officers.  *Id.* at 9.  Plaintiff requested to be returned to his cell.  *Id.* After returning to his cell, Plaintiff, who was "very highly upset"

_____

[2]"Close Management" is defined as "the confinement of an inmate apart from the general population , for reasons of security or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others."  Fla. Admin. Code, Rule 33-601.800(d). There are three levels associated with Close Management status, CMI, CMII, and CMIII, with CMI being the most restrictive and CMIII being the least restrictive.  *Id.* (e).

was speaking loudly to his cellmate, his "biological brother." *Id*. His brother was trying to calm Plaintiff down. *Id*. Officer Kraus returned to Plaintiff's cell door and told Plaintiff, "Shut the f*ck up." *Id*. Plaintiff's cellmate told Kraus not to speak in that manner to his brother, the Plaintiff, and began "citing code annotated" to Officer Kraus. *Id*. Officer Kraus got "mad" and opened the flap on the cell door and administered chemical agents into the cell stating, "Stop fighting." *Id*. Plaintiff and his cellmate were not fighting. *Id.* Thereafter, Plaintiff was ordered to "cuff up" and, after securing a waist chain on Plaintiff, Officer Coniglio took Plaintiff to the shower to decontaminate. *Id*. at 10. Instead of placing Plaintiff in a "cold shower" as required by protocol, Officer Coniglio placed Plaintiff in a "very hot" shower, which increased the chemical's burning sensation. *Id*. Additionally, Officer Coniglio "took and twisted the Plaintiff's right arm and punched Plaintiff in his lower left side of [his] back" during his escort of Plaintiff at the bottom of F-3 Quad stairs near cell F3-112. *Id*.

Lieutenant Walker was the supervisor of Officers Kraus and Conigilio. *Id*. Lieutenant Walker "had knowledge" that Plaintiff and Officer Kraus and Conigilio "had problems with each others [sic]." *Id*. Lieutenant Walker "had reasonably foreseen the unreasonable risk that harm would occur, and Defendant did not act to prevent it." *Id.*

## II. Standard

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." *Teblum v. Eckerd Corp. of Fla., Inc.*, 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary

judgment." *Lofton v. Sec'y Dep't of the Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004)(citing *Anderson*, 477 U.S. at 247-48). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d at 1260(citing *Celotex*, 477 U.S. at 323). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences", *Anderson*, 477 U.S. at 255, must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent supportable by the record," *Penley v. Eslinger*, 605 F.3d 843, 848

(11th Cir. 2010)(citation omitted).   The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment.   In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." *Beard*, 548 U.S. at 530.   "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. Sch. Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).   Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.   *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).   In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.   *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III. Findings of Fact and Conclusions of Law

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation

occurred under color of state law.  *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  *Marsh v. Butler County*, 268 F.3d 1014, 1059 (11th Cir. 2001); *Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).  A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-692 (1978); *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003).

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force.  *Thomas v. Bryant*, 614 F.3d 1288, 1305 (11th Cir. 2010)(reviewing categories of claims under the Eighth Amendment).  An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." *Id.* at 1304 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))(other citations omitted).  It is the "unnecessary and

wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." *Ort v. White*, 813 F.2d 318, 324-325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. *Williams v. Burton*, 943 F.2d 1572,

1575 (11th Cir. 1991)(citations omitted).   Indeed, "[t]hat
deference extends to a prison security measure taken in response to
an actual confrontation with riotous inmates, just as it does to
prophylactic or preventive measures intended to reduce the
incidence of these or any other breaches of prison discipline."
*Whitley*, 475 U.S. at 322; *See also Bell v. Wolfish*, 441 U.S. 520,
547 (1979).

**Defendant Kraus**

Plaintiff is a close management inmate who, prior to the
instant action, had been found guilty of various disciplinary
actions for violating Department rules, including, but not limited
to:  five incidents of unarmed assault, three incidents of spoken
threats, three incidents of disorderly conduct, four incidents of
disobeying orders, two incidents of participating in a disturbance,
two incidents of possessing a weapon, and one incident of fighting.
Def. Exh. A.  On February 3, 2009, Plaintiff was confined in cell
F3-210 in F-dormitory at Charlotte Correctional Institution.  Def.
Exhs. B-C.  Sometime after 8:00 a.m., Plaintiff was removed from
his cell for recreation, but was returned back to his cell soon
thereafter pursuant to Plaintiff's request.  Complaint at 9; Motion
at 3.  It is also undisputed that within a short period of time
after Plaintiff was returned to his cell, Officer Kraus arrived at
Plaintiff's cell and administered chemical agents into the cell

occupied by Plaintiff and another inmate.  Complaint at 9; Motion
at 4, Exhs. B-C.

The disputed facts involve the reason for the application of
chemical agents into the cell occupied by Plaintiff and another
inmate.  Defendant Kraus submits that, shortly after he returned
Plaintiff back to his cell, he heard a "loud commotion coming from
[Plaintiff's] cell." Def. Exh. C at 2, ¶5; Exh. B.  Upon arrival,
Defendant Kraus "observed inmate Palmer assaulting his cellmate,
inmate Leroy Handy, DC#970630, by striking him in the head." *Id.*
Defendant Kraus "ordered Palmer to cease his assault several times
but Palmer refused to comply with the orders" and "continued to
strike inmate Handy in the head." *Id.*, ¶6.  Because Palmer refused
to "heed [Defendant Kraus'] multiple orders, force became
necessary." *Id.*, ¶7.  Defendant Kraus "employed three one-second
bursts of chemical agents hitting Palmer in the head and upper
torso." *Id.*  As a result, "Palmer ceased striking inmate Handy."
*Id.*  Defendant Kraus denies stating "Shut the f*ck up," denies that
inmate Handy cited any "administrative code" to him, and denies
that he was "mad or upset in any way prior to using chemical
agents." *Id.*, ¶16.

Plaintiff disputes Defendant Kraus' contentions and submits
that he and his cellmate Handy, who Plaintiff claims is his
"biological brother" were not fighting but were only "having
words," which Plaintiff claims is merely having a conversation.

-10-

Response at 17.   Plaintiff states that he was talking loudly because he was "very highly upset with the Defendants" not with inmate Handy, his brother.   *Id*.   As evidence that Handy is his brother, Plaintiff attaches a copy of the program presumably handed out at his Mother, Annette Palmer's, funeral.   Pl. Exh. (Doc. #91) at 46.   According to the "Obituary" listed on the program, "Leroy Handy and Samuel Palmer" are listed as Ms. Palmer's "2 sons."   *Id*.

As additional evidence in support of his version of the facts, Plaintiff submits the Affidavits of inmate Sylvester Jones,[3] (Doc. #91 at 31-33), inmate Leroy Handy (Doc. #91 at 34-36), and inmate Frankline Manuel (Doc. #91 at 38-40).   Inmate Jones states that, at the time of the incident, he was located in cell F-301 and saw Plaintiff "having a confrontation" with Officer Kraus and heard Plaintiff request to be placed back in his cell.   Doc. #91 at 32, ¶5.   Inmate Jones further states that after Palmer was placed back in his cell he heard Kraus tell someone "to shut the f*ck up." *Id*., ¶6.   He then states "Kraus popped (open) the flap and used chemical agents on [Palmer] and his brother."   *Id*., ¶7.

Mr. Handy states that he is Plaintiff's "biological brother" because they share the same mother.   *Id*. at 34.   Handy states that

---

[3]The subject exhibit is entitled "Affidavit of Sylvester Jones" and bears a signature "Sylvester Jones" on the signature line.   See Doc. 91 at 31-32.   However, on the first page of the Affidavit it states that "Before me, the undersigned authority, personally appeared Franklin Manuel D.C. N20354, who first being duly sworn says:" Id. at 31.   The Court assumes the foregoing is a typographical error.

Palmer was being taken out of the cell to go to recreation when he heard him "having a confrontation with an officer." *Id.* at 35, ¶7. Handy yelled out the cell door to Palmer and told him "to chill out." *Id.* Handy then heard Palmer say "f*ck this put me back in the cell." *Id.* at ¶8. When Palmer returned to the cell, he "started talking about the incident." *Id.,* ¶9. Palmer "was talking kind of loud due to the fact he was mad at the officers." *Id.* "Officer Kraus walked up to the cell and told [Palmer] to 'shut the f*ck up.'" *Id.,* ¶10. Inmate Handy began "citing the code of conduct" to Kraus. *Id.* Kraus then "opened the flap on the door and started spraying chemical agents into the cell." *Id.,* ¶10. Palmer stepped in front of Handy "to block [Handy] from the chemical agents." *Id.* Handy had a seizure from the gas and does not remember anything further. *Id.,* ¶11.

Inmate Manuel states that he was housed in cell F-3212 at the time of the incident. *Id.* at 38, ¶3. He heard Palmer "arguing" with another officer and telling an officer "to put him back in the cell." *Id.,* ¶4. Manuel heard an officer tell someone to "shut the f*ck up" and then heard a flap open. Afterwards, Manuel heard Palmer say "cracker this is my f*cking brother. You gassed us for nothing. Someone get the nurse my brother is having a seizure." *Id.,* ¶5. After Palmer was brought out of the cell, Palmer was "cussing [the officers] out, and saying they gassed them for nothing and to get a nurse." *Id.,* ¶6.

As an initial matter, the incident reports authored by correctional officers other than Kraus, describe events that they witnessed, after they arrived at Plaintiff's cell, which was after the application of chemical agents by Kraus.   Def. Exhs. B at 21 (details of incident by Officer M. Belmont), *Id.* at 23 (details of incident by Officer A. Guarino).   Thus, the record contains a genuine dispute of fact as to whether Plaintiff was fighting with his cellmate inmate Handy that warranted the spontaneous use of chemical agents on Plaintiff.   This is material to the determination of whether the force was used to restore order, or whether it was unnecessary and excessive and applied maliciously and sadistically.   Based on the aforementioned genuine disputes of material fact, the Court denies Defendant Kraus' Motion for Summary Judgment.

**Defendant Walker**

Defendant Walker states that the Complaint "fails to state a claim" as to him.   Motion at 8.   In particular, Defendant Walker submits that the Complaint only alleges that Walker "knew" that he and Defendants "had problems."   *Id.* at 10.   Defendant Walker contends that "these vague and conclusory allegations are inadequate to state a deliberate indifference claim."   *Id.* (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950(2009). Defendant Walker also submits that his "mere supervision (or 'preeminence') over

other correctional officers is an insufficient reason to hold Walker liable. . . . ." *Id.* at 12.

Defendant Walker recites the motion to dismiss standard of review in support of the dismissal of Plaintiff's Complaint as to him. Motion at 10-12. Walker does not point to any exhibits in support of his request seeking dismissal. *See generally Id.* Consequently, the Court will employ the *Twombly-Iqbal* plausibility standard in reviewing whether the Complaint is subject to dismissal as to Defendant Walker. *See Randall v. Scott*, 610 F.3d 701, 708, n.2 (11th Cir. 2010).

In response to Defendant Walker's request for dismissal, Plaintiff states that four months after the February 3, 2007 incident, Defendant Walker, along with Defendants Kraus and Coniglio "assaulted the Plaintiff again." Response at 8.[4] Further, Plaintiff argues that Defendant Walker was Defendants Kraus and Coniglio's "supervisor." *Id.*

The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. *Hicks v. Moore*, 422 F.3d 1246 (11th Cir. 2005). Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions

---

[4]Plaintiff refers the Court to case number 2:09-cv-604-FtM-29DNF, which concerns this subsequent assault on Plaintiff.

-14-

of the supervisor and the alleged constitutional violation.
*Matthews v. Crosby,* 480 F.3d 1265, 1270 (11th Cir. 2007). The
causal connection can be established by showing: (1) that the
supervisor knew about and failed to correct a widespread history of
abuse; (2) that a custom or policy resulted in the constitutional
violation; or, (3) that the facts support an inference that the
supervisor directed the subordinates to act unlawfully, or knew
that the subordinates would act unlawfully and failed to stop them
from doing so. *Harper v. Lawrence County, Ala.*, 592 F.3d 1227,
1235-36 (11th Cir. 2010); *Cottone v. Jenne*, 326 F.3d 1352, 1360
(11th Cir. 2003).

Here, the Complaint contains no allegations that Defendant
Walker was consulted prior to Defendant Kraus applying the chemical
agents on Plaintiff. Nor does the Complaint aver that Defendant
Walker was present either during the application of chemical
agents, or at anytime thereafter. Likewise, the Complaint does not
aver that Defendant Walker was present when Defendant Coniglio
allegedly twisted Plaintiff's arm, or when Coniglio allegedly
placed Plaintiff in a hot shower. Instead, the Complaint alleges
only that Walker "knew" that Plaintiff and Defendants "had
problems." The Complaint does not, however, specify what type of
problems had occurred between the parties, when the problems had
occurred, or how Defendant Walker was made aware of the problems.
Events that occurred subsequent to the instant action are not

relevant in determining Defendant Walker's knowledge at the time of the incident.  There are no allegations that Defendant Walker was on notice of a "history of widepread abuse" by either Defendant Kraus or Coniglio, or had a policy or custom that condoned the alleged constitutional deprivations.  Instead, it appears from the four corners of the Complaint that Plaintiff premises liability on Defendant Walker solely due to his supervisory position.  *See* Complaint at 10 (alleging that Defendant Walker had knowledge because he "was preeminent of the two officer's [sic] and over the dorm").  It is well established that § 1983 claims cannot be brought against supervisory officials predicated upon vicarious liability or *respondent superior*.  *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010).

Based upon the foregoing, the Court finds the Complaint fails to state an Eighth Amendment claim against Defendant Walker pursuant to 42 U.S.C. § 1983.  Consequently, the Court will dismiss Defendant Walker from this action, without prejudice.

**Official Capacity Claims[5]**

Defendant Kraus submits that the Complaint is unclear as to whether Plaintiff is pursuing claims against him in his individual or official capacity.  Motion at 19.  Nonetheless, Defendant states that to the extent Plaintiff pursues official capacity claims,

---

[5]Because the Court finds Defendant Walker is due to be dismissed, the Court will address the remaining grounds raised in the Motion as to Defendant Kraus only.

Eleventh Amendment immunity precludes the award of monetary damages. *Id.*

In Response, Plaintiff clarifies that he is not seeking monetary damages from Defendant in his official capacity. Response at 22-23. Plaintiff explains that he names the Defendant in his official capacity for purposes of obtaining injunctive and/or declaratory relief. *Id.* at 23.

The Court recognizes that any official capacity claim for monetary damages against Defendant is precluded by Eleventh Amendment immunity. *Kentucky v. Graham*, 473 U.S. 159 (1985). To the extent Plaintiff sues Defendant Kraus in his official capacity, then this action is effectively an action against the governmental entity Defendant represents, which in this case is the Florida Department of Corrections. *Graham*, 473 U.S. at 166; *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1115 (11th Cir. 2005). A governmental entity is only liable when the entity itself was the "moving force" behind the alleged constitutional deprivation. *Graham*, 473 U.S. at 166 (citations omitted). Thus, in an official capacity action, the entity's "policy or custom" must have played a part in the violation of federal law. *Id.* (other citations omitted). Other than moving for dismissal of monetary damages against Defendant in his official capacity, Defendant does not move for summary judgment on Plaintiff's official capacity claim. Therefore, Plaintiff's claim against Defendant Kraus in his

official capacity will proceed only to the extent that Plaintiff seeks injunctive or declaratory relief.

### 42 U.S.C. § 1997e(e)

Defendant Kraus submits that 42 U.S.C. § 1997e(e) precludes Plaintiff from recovering compensatory or punitive damages because he cannot demonstrate physical injury.  Motion at 20.   In support Defendant Kraus points to Exhibits B and F as "evidence . . . that Plaintiff did not sustain a physical injury."   Upon review, Defendant presents the written report by Lieutenant A. Walker in which Walker states that he observed Palmer "for approximately 1 hour" after the incident and that Palmer showed "no signs of distress." Def. Exh. B at 20.  Additionally, Defendant points to the post-use- of-force exam that notes that "Ø injuries noted head to toe.  Lungs clear, skin intact, Ø redness, c/o slight burning to eyes, Ø redness in eyes, watering noted."  Def. Exh. F.

Significantly, Plaintiff does not allege that he suffered any physical injury as a result of the application of chemical agents. *See generally* Response and Complaint.   In Response, Plaintiff argues that, as a matter of equity, he should be entitled to monetary damages because his constitutional rights were violated. Response at 25-28.   Plaintiff further points out that it is inappropriate for the Court to determine the availability of punitive damages at the summary judgment stage of the proceedings because punitive damages are available upon a showing of evil

motive, intent, recklessness, or callous indifference. *Id.* at 23-24.

Section 1997e(e) limits recovery for prisoner plaintiffs seeking monetary damages for mental or emotional injuries suffered while in custody, absent a prior showing of physical injury. 42 U.S.C. § 1997e(e). Section 1997e(e) does not define what consitutes a physical injury. The Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more than *de minimis*, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated in part on other grounds*, 216 F.3d 970 (11th Cir. 2000)(en banc). While § 1997e(e) bars damages for mental or emotional injury, it does not affect the availability of declaratory or injunctive relief. *Id.* at 1288. Additionally, Plaintiff may also seek nominal damages for the violation of a fundamental right. *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003)(Stating that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). Further, under governing precedent, it appears that a prisoner-plaintiff's request for punitive damages, absent a showing of a compensable physical injury, is also prohibited by virtue of § 1997e(e). *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007).

Upon review of the Complaint and the record, Plaintiff does not allege a physical injury, much less a physical injury that is more than *de minimis*.  Thus, Plaintiff's claims for compensatory damages for mental or emotional distress and for punitive damages are barred.  From a liberal reading of the Complaint, however, the Court finds that Plaintiff seeks declaratory and injunctive relief, and thus, may be entitled to nominal damages if he prevails on his Eighth Amendment claim against Defendant Kraus.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Defendant Walker's Motion to Dismiss Plaintiff's Complaint is **GRANTED**, and Plaintiff's Amended Complaint is **DISMISSED, without prejudice**, as to Defendant Walker.

2.   Defendant Kraus' Motion for Summary Judgment (Doc. #78) is **GRANTED to the extent** that Plaintiff may not seek monetary damages against Defendant Kraus in his official capacity, and that Plaintiff's claims for punitive and compensatory damages for mental and emotional injuries are barred.  In all other respects the Motion is **DENIED.**

3.   The **Clerk of Court** shall enter judgment accordingly and correct the docket to reflect the dismissal of Defendant Walker.

**DONE AND ORDERED** at Fort Myers, Florida, on this 9th day of March, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record